# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

FERNANDO CANSECO and ) 
RELIABLE AMBULANCE SERVICES, INC. )
        Plaintiffs, )
   )
   )
     v. )
   )
UNITED STATES OF AMERICA, CARL )
NEIRA, Internal Revenue Service )
Agent, LUIS GUERRA, Internal )
Revenue Service Agent, ROBERT L. )
DAVILA, Criminal Investigation )
Division Officer, and VICTOR G. )
GUEVARA, Criminal Investigation )
Officer, )
        Defendants. )

CIVIL NO. C-00-104

Court
of Texas
JUN 30 2000
Michael N. Milby, Clerk

---

**PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION
TO DISMISS COMPLAINT AGAINST THE UNITED STATES
AND ITS EMPLOYEES SUED IN THEIR OFFICIAL CAPACITY;**

**BRIEF IN SUPPORT OF THE UNITED STATES'
MOTION TO DISMISS COMPLAINT AGAINST THE UNITED STATES
AND ITS EMPLOYEES SUED IN THEIR OFFICIAL CAPACITY;**

**INDIVIDUAL DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE  MOTION FOR SUMMARY JUDGMENT;**

**BRIEF IN SUPPORT OF INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT;**
**and**
**RESPONSE TO SUPPLEMENT TO THE INDIVIDUAL DEFENDANTS'
BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE
ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

---

JO ELLEN HEWINS
Federal I.D. No. 12421
State Bar No. 09367857
**CANALES & SIMONSON, P.C.**
Attorneys at Law
2601 Morgan Ave.-P.O. Box 5624
Corpus Christi, Texas 78465-5624
(361) 883-0601
(361) 884-7023 - Fax
**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FERNANDO CANSECO and<br>RELIABLE AMBULANCE SERVICES,<br>INC., | )<br>)<br>)<br>) | |
| **Plaintiff,** | )<br>) | |
| v. | )<br>) | CIVIL NO. C-00-104 |
| UNITED STATES OF AMERICA, CARL<br>NEIRA, Internal Revenue Service<br>Agent, LUIS GUERRA, Internal<br>Revenue Service Agent, ROBERT L.<br>DAVILA, Criminal Investigation<br>Division Officer, and VICTOR G.<br>GUEVARA, Criminal Investigation<br>Officer, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Defendants.** | ) | |

PLAINTIFF'S RESPONSE TO  DEFENDANTS' BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS,
OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT

Plaintiffs Fernando Canseco and Reliable Ambulance Services, Inc., hereby submit their

Response to Defendants' Motion To Dismiss, Or In The Alternative Motion For Summary

Judgment and in support hereof show the following:

**I.  INTRODUCTION**

In determining whether to grant a 12(b)(6) motion to dismiss, the Court  must accept all

of the factual averments in the complaint as true and draw every reasonable inference in favor of

the Plaintiffs.  Fed. Rules Civ. Proc. Rule 12(b)(6); *__Eason v. Holt__, 73 F.3d 600 (5th Cir. 1996);*

rc\wp6.1\data\cases\canseco.604\resp.sjudg

*Benton v. United States, 960 F.2d 19, 21 (5th Cir. 1992).*

Title III of the Restructuring and Reform Act of 1998, commonly titled the Taxpayer Bill of Rights, allows a taxpayer to bring a civil action for refund of overpayment of taxes under certain conditions.  The taxpayer refund action is a statutory mechanism by which the government has consented to be sued.  This mechanism does not allow for recovery for constitutional violations that occur in the course of and subsequent to the institution of the suit.

*Mallette Bros. Construction Co., Inc. v. United states, 695 F.2d 145 (5th Cir. 1983).*

Congress has recognized the right of taxpayers to the award of damages resulting from unauthorized actions of the Internal Revenue Service (IRS) taken to collect taxes. 26 U.S.C.A. Section 7433(b) (West Supp. 1989 and 1997); prior, Omnibus Taxpayer Bill of Rights, Pub. Law 100-647, 102 Stat. 3730; originally amended as part of Taxpayer Bill of Rights, P.C. 104-168, 110 Stat. 1452.

Nearly 800 pages of the Congressional Record related to hearings and later added materials reflect the concern that lawmakers expressed with regard to the tactics employed by agents of the IRS.  (144 Cong. Rec. H5100-01, 1998 WL 333069 Cong. Rec.).  The Act was passed by Congress to provide remedies for taxpayers against what has been described in earlier case law as an "overzealous officialdom." *McMillen v. U.S. Dep't of Treasury, 960 F.2d 187, 190 (1st Cir. 1991), citing, Cameron v. IRS, 773 F.2d 126,129 (7th Cir. 1985)*; and, *Bivens v. Six Unknown Narcotics Agents, 403 U. S. 388 (1971).*

The Taxpayer Bill of Rights document does not recognize an action for redress of constitutional violations by Federal Agents in assessment proceedings, only collection.

Bivens actions against agents of the federal government who violate the constitutionally

protected rights of citizen, though limited in application, is the avenue available to taxpayers to redress abuse by government agents.

The Plaintiffs agree that the government must protect its investigatory ability from curtailment by frivolous lawsuits designed to interfere with legitimate government activity and that the United States may only be sued when Congress has expressly provided statutory consent. *Price v. United States, 69 F.3d 46, 49 (5th Cir. 1995); cert. denied 117 S.Ct. 259 (1996).* Plaintiffs further agree that Bivens is not available where Congress "has expressly precluded creation of such a remedy by declaring that existing statutes provide the exclusive mode of redress." *Bush v. Lucas, 462 U.S. 367, 373, 103 S.Ct. 2404, 76 L.Ed. 2d 648 (1983); Schweiker v. Chilicky, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)* (when the design of a government program suggests that Congress has provided what it considers to be "adequate remedial mechanisms for constitutional violations that may occur in its course of administration," Bivens is not a remedy available to a citizen).

The Fifth Circuit, however, suggests that when a complaint "sketches a portrait of a lawless and arbitrary vendetta fueled by the power of the state, designed to harass by unwarranted intrusion into the minutiae of the Plaintiff's financial affairs and intended to abuse by the creation of palpably unfounded claims against their property which they can set right only by unnecessary litigation, a Bivens action may be appropriate." *Rutherford v. United States, 702 F.2d 580, 584-85 (5th Cir. 1983).*

## FACTUAL BACKGROUND

The Plaintiffs bring this action due to the retaliatory actions taken by overzealous agents who had formed an opinion of Plaintiff Mr. Canseco unrelated to any documents or records

contained in the taxpayer's files. Guerra and Neira determined that Fernando Canseco was a "criminal" and set out to prove this in derogation of his rights. Agents Davila and Guevara assisted not only in the "sting" operation, but moreover, these two agents further engaged themselves in threats and intimidation of Mr. Canseco's power of attorney, Vicente Sepulveda.

Prior to the filing of the refund suit by Mr. Canseco, the agents Guerra and Neira, had insisted on access to the corporate financial records and returns of the corporate Defendant, Reliable Ambulance Service, Inc. (Reliable) for all years of its existence (1988 to 1995). Mr. Canseco is a 100 percent shareholder in Reliable. Initially, Guerra and Neira refused to open any of the corporate returns for audit. Mr. Neira stated that the IRS had no intention of opening the returns for audit, but would find deductions to disallow, thus, offsetting the personal refund. This does not, in and of itself, constitute wrongdoing. In a meeting with Vicente Sepulveda in March 1998, these two agents made accusatory and defamatory statements about Mr. Canseco. **(Affidavit of Sepulveda Exhibit A).**

Mr. Canseco, through counsel, Canales and Simonson, and Michael Stukenburg, and his CPA representative, Vicente Sepulveda, refused to supply the records without opening the pertinent years for full audit. The IRS did not want to open these years for audit because certain years were closed and were the most devastating years (1991-1994), financially, for the corporation. (What had been the most lucrative operation in the corporation, San Antonio, closed in 1993, and the parent company filed for bankruptcy protection  January 4,1994).

After repeated requests from the taxpayer, the IRS agents finally sent a letter opening two of the corporate years for audit, fiscal year 1994 and 1995. The IRS, having already conducted the initial meeting with the taxpayer, requested a great deal of financial backup material which

was located at the attorney's office.

On May 6, 1998, Defendant Guerra came to the office of Canales & Simonson, allegedly to conduct the audits of the corporation.  He arrived late and made a cursory review of the financial records and documentation.  He engaged in inane and pointless conversation and made repeated references to his financial condition, the lack of air conditioning in his car, and his past career intentions.  Plaintiffs believe Mr. Guerra was improperly recording this proceeding.  The documents that had been provided for his review were voluminous and had been placed in a separate building for the purpose of the audit.  At this meeting, Guerra stated that the audit was over and he had seen everything he needed to see.  He then accompanied Plaintiff and Mr. Sepulveda to lunch.

Defendant Guerra made no criticism of the audit documents provided and did not request additional documents.  Mr. Sepulveda remarked at the time that it was not like any audit he had ever seen and it were as if Guerra had not really intended to do an audit.

On the afternoon of May 6, Defendant Guerra called Mr. Canseco at his place of business purportedly to discuss settlement of the refund claim and any outstanding issues.  Initially, Mr. Canseco thought that Guerra was sincerely interested in resolving the pending tax issues. Guerra informed Mr. Canseco that he was the agent in charge and they could settle the matter between themselves.  Mr. Canseco expressed concern over his mounting attorney and accounting costs and requested that Guerra consult with Neira so they could reach an agreement.

Concerned about the tone of Mr. Guerra's call, Mr. Canseco, immediately, called Mr. Sepulveda and his attorneys' office. (The attorneys were in trial in Houston and did not discuss this matter with the client, immediately).  Mr Sepulveda contacted Michael Stukenburg, a tax

CIMPDF - www.fesiu.com

attorney, who had previously assisted Mr. Canseco. Plaintiff Canseco expressed concerns about meeting with Agent Guerra and was told not to meet with Agent Guerra and to tape all calls from the agent. Through an interceding federal official, these tapes were turned over to the FBI agent, Richard Wallace.

Even after the FBI agent was given the tapes, Guerra and Neira still wanted the FBI agent to pursue setting up the meeting between Guerra and Plaintiff. The FBI agent tried to get Plaintiff to meet with Guerra. At the same time the FBI was trying to persuade Plaintiff to meet with Mr. Guerra, the agents were securing the permission of Tim Hammer, Assistant United States Attorney, to allow Guerra to be wired for a meeting with Plaintiff.

Plaintiff made the decision was not to meet with Guerra. The FBI agent criticized him handily for failing to cooperate. It was of concern that Plaintiff found the actions of the IRS agents peculiar. Counsel was concerned that Plaintiff, if a major misunderstanding took place, faced possible criminal implication in bribery even though he had not initiated nor participated in any real attempt to bribe. The IRS Agents, using the FBI, would have been engaged in setting up a taped scenario in which the Plaintiff is offering bribe money to an agent of the IRS to "settle" the refund case.

The misconduct of IRS agents, Neira and Guerra, and the IRS special agents Davila and Guevara, who were in communication with the FBI agent, are not conduct contemplated by the civil redress allowed in taxpayer refund or in collection actions in accordance with the Taxpayer Bill of Rights. 26 U.S. 7433. The actions of these agents were taken in an effort to entrap a taxpayer, who because of previous unsubstantiated allegations by the State of Texas, was being treated unfairly and in a suspect manner. Further, these actions were taken in retaliation for the

filing of the taxpayer refund suit and were, in fact, the result of overzealous officialdom.  Neira

and Guerra never intended to audit the corporate returns, but rather sought to find a way to entrap

Plaintiff into committing a criminal act.  When Plaintiff did not respond, they sought to set him

up, anyway.  These actions do not comport with standards of due process.  The civil power òf the

IRS is not to be used to create or further a criminal investigation. ***United States v. LaSalle***

***National Bank***, *98 S.Ct. 2357 (1978)* (Internal Revenue Service must use summons power in

good faith).

## II. ISSUES

**1.     IS FILING OF A REFUND CLAIM AN ACTION
        IN COLLECTION OR ASSESSMENT FOR PURPOSES
        OF THE WAIVER OF SOVEREIGN IMMUNITY?**

The taxpayer has the right to sue the United States in a refund action.  The refund action

does not allowed for recovery of damages due to the violation of constitutional rights of the

Plaintiff in the course of the assessment of nor for retaliatory actions taken against a taxpayer for

filing a refund suit.

The "tax" has already been collected, therefore, the refund suit is not specifically an

action in the manner of "collection".  Rather, it is an action to recover property wrongfully held

by the United States.  In the instant case, the Defendant IRS agents, Neira and Guerra, in

conjunction with Defendant IRS special agents, Davila and Guevara, engaged in retaliatory

tactics because the Plaintiff Taxpayer (Fernando Canseco) used the very process instituted by

Congress to remedy an abuse, i.e., a taxpayer refund action.

When the IRS did not refund the money owed to the individual Plaintiff taxpayer; did not

deny the claim and state its reasons for disallowance within one hundred and eighty days as

required by law; and, threatened to "browse around" in the corporate returns until they found

sufficient disallowances to offset the refund; then, the Plaintiff sued for the refund. Within two

weeks of the filing of the refund suit, the four Defendant IRS agents were attempting to set a

bribery entrapment scheme in motion. They misused another governmental agency and authority

in the process (FBI and United States Attorney's Office), and did so with malice.

The United States has waived sovereign immunity consented and to be sued in refund

actions. 26 U.S.C.A. § 6532. The specific IRS Agents involved herein sought to impede this

rightful action and should not be granted immunity from their own wrongdoing. ***Bush v. Lucas,***

***100 S.Ct. 1846, cert. granted.***[where retaliatory action of individual federal government

employee was found to be actionable].

There is no grant from Congress waiving the sovereign immunity of the United States for

the retaliatory actions of its agents in this specific circumstance, unless one treats the refund

action as an action in the manner of a "collection", rather than an "assessment" procedure.

Plaintiffs have found no case law on the interpretation of the character of the refund claim as

either a collection or as an assessment.

Plaintiffs allege that the harassing and retaliatory actions of the government agents in

fact, took place in the context of and because of a duly recognized action against the United

States, the refund claim.

The case law cited by the government denying a waiver of sovereign immunity predates

the Taxpayer Bill of Rights, which waives sovereign immunity in cases of abuse related to

"collection".

Plaintiffs have placed and rely on the government's waiver of sovereign immunity in the

context of civil redress for wrongful conduct of its agents in the process of collection, to assert its claim against the United States.  26 U.S.C. 7433.

The Congressional materials are rife with concern over the actions of agents taken in furtherance of depriving taxpayers of their property without due process of law.  Mr. Canseco has been deprived of his property since 1993 and requested return of that property in August of 1997.  Since March of 1998, he has been subjected to the afore described harassment, threats and intimidation of agents of the government.  These are the very actions for which Congress saw fit to waive sovereign immunity of the federal government.

These IRS Agents were well aware of the outrage at the Congressional hearings and the actions of Congress taken in 1997 due to these hearings.  The Taxpayer Bill of Rights was passed by Congress in 1997, to be effective in July 1, 1998.  The Agents, though fully aware of the directives to be implemented by the IRS to curtail these abuses, proceeded to act in the very manner proscribed by this law.  They proceeded at their peril.

The United States waived sovereign immunity in cases involving abuse by agents in the collection procedure; the agents are not immune from suit because they were well aware that they engaged in abusive, harassing and retaliatory actions that were proscribed by Bivens and recited in *Mitchell v. Forsythe, 472 U.S. 511 (1985).*

**2.    HAVE THE PLAINTIFFS PROVIDED SUFFICIENT FACTS TO SUPPORT THE CONTENTION THAT THE CONDUCT OF THE AGENTS VIOLATED CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS OF WHICH A REASONABLE PERSON SHOULD HAVE KNOWN?**

The IRS agents did not intend to conduct an audit of the corporation's returns.  They intended to browse through the corporate return and disallow deductions sufficient to offset the

refund owed to the individual taxpayer. There was no good faith audit or even a preliminary fact-finding to be followed by a true audit. If the agents believed that the plaintiff was engaging in criminal conduct, i.e., an attempt to bribe a federal agent, then they had the right to refer this matter to the criminal division for investigation.

After it was clear that the Plaintiff had informed the FBI about his concerns that Defendant Guerra was soliciting a bribe, the IRS agents still wanted to go forward with the attempt to get the Plaintiff to offer the bribe on tape. They used the FBI agent to facilitate this endeavor. The implications for Plaintiff Canseco, deprivation of liberty, were dire. (See, **_Standefer v. United States_, 100 S.Ct. 1999 [1980],** where agent of IRS acquitted in bribe scheme, but taxpayer found guilty). These agents acted improperly contacting Mr. Canseco directly. Since July, 1998, IRS is limited in communicating with taxpayers when agents are aware that taxpayer is represented. [IRS § 6304(a)(2).]

There are very specific differences in the rules applicable in criminal and civil investigations and the rights afforded are different. (i.e. taxpayer representative need not be present for criminal interviews, but investigator must inform of criminal investigation and read Miranda; IRM 9781, Sec. 342.132). Once a referral for criminal investigation is made by the Examiner, he must suspend the audit. (IRM 4565.1). Here the auditor for IRS Guerra and Neira acted as agents for the criminal investigation, did not suspend the audit and did not advise the Plaintiffs they were targets of a criminal investigation in violation of IRS regulations and procedural due process requirements.

This examiner, Guerra and his supervisor, Neira, violated every guideline put forth in the Internal Revenue Manual with respect to suspicion of "fraud". (Sec. IRM 4231 Sec. 984).

rc\wp6.1\data\cases\canseco.604\resp.sjudg                    10

The IRM 9781, Subsection 341.2 lists constitutional rights of taxpayers to include the Fourth, Fifth, Sixth Amendments.  The Agents and Examiners were aware of the unreasonable nature of their actions and were on notice through the guidelines, manuals, codes and case law connected with the IRS.

The agents engaged in misrepresentation, deceit and trickery much like that described in _United States v. Caldwell_, _820 F.2d 1395 (5th Cir. 1987)_ and _United States v. Tweel_, _550 F.2d 297 (5th Cir. 1997)._  These case involved suppression of evidence in the criminal context when the agents denied the existence of a criminal investigation in order to carry out continued search of the target's records in a false "civil audit".  The evidence was tainted and unusable.

The Courts are sensitive to the differences in civil and criminal proceedings where discovery is concerned.  The _Tweel_ court noted that "we cannot condone this shocking conduct by the IRS.  Our revenue system is based upon the good faith of taxpayers and the taxpayers should be able to expect the same from government in its enforcement and collection procedures.  _Tweel_, _supra @300._

In addition, after the "sting operation" was revealed as a fiasco, Vicente Sepulveda met with the FBI agent Wallace at Wallace's request.  When Mr. Sepulveda arrived at the FBI offices, he was taken to a room and interrogated by the two IRS special agents, Davila and Guevara.  Sepulveda was led to believe that there had been an on-going criminal investigation of Mr. Canseco and he was threatened about his future ability to represent clients before the IRS, if he continued to represent Mr. Canseco.  Also, the IRS Federal Agents made reference to Mr. Canales's character and his representation of Mr. Canseco, and the fact that Mr. Canseco's ambulances made frequent trips to Nuevo Laredo.

Alarmed by this encounter, Mr. Sepulveda notified the Plaintiff and Plaintiff's counsel that there was a parallel criminal investigation involving Mr. Canseco. The government agents in their affidavits attached to the government's motions, deny that there was ever such a criminal investigation. Either they were not truthful with Mr. Sepulveda or they are not truthful now. It is our belief based on the actions of the special agents that there was a criminal investigation of Mr. Canseco and that they attempted to use the civil audit process in furtherance of their investigation in violation of the taxpayer's due process rights. Any evidence secured in this matter is tainted.

Law Enforcement officials are immune from suit for discretionary acts performed in good faith while acting within the scope of their authority unless their conduct violates a clearly established Constitutional Right. *__Harlow__, supra @ 816.*

A Constitutional right is clearly established when "the contours of that right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *__Anderson v. Creighton__, 483 U.S. 635 (1987).* The Defendants were aware that they had overreached and attempted to avoid detection through intimidation of Plaintiffs' representative.

### 3.    WAS THE INVESTIGATION BEING CONDUCTED FOR A LEGITIMATE PURPOSE?

The Plaintiffs allege that the "investigation" and the civil audit process was not being conducted for a legitimate purpose. The sting operation was set up to deny the refund and in retaliation for the filing of the taxpayer refund suit. The Powell case, which involves the issuance of a summons to obtain documents from a taxpayer, states that the threshold question that must be answered before issuing the summons, is whether or not the investigation is being

conducted for a legitimate purpose. *U.S. v. Powell,* 379 U.S. 48, 85 (1964).

Though the case before the Court is not a summons action the analysis of the law is analogous. It is the allegation of the Plaintiff that this "investigation" was not conducted for a legitimate purpose, but rather was set up to harass the taxpayer. When the bribery attempt failed, the Special Agents, Davila and Guevara, threatened a third party representative without benefit of his constitutional warnings. The creation of criminal behavior is not a legitimate purpose for an audit meeting, and is a threat to the liberty of the Plaintiff. *(See, United States v. Caceres,* 99 *S.Ct. 1465 (1979).* It is an abuse of the civil audit to issue a civil summons solely in furtherance of a criminal investigation. *United States v. Wright Motor Co.,* 536 F.2d 1090 (5th Cir. 1996)

### 4.    HAS THE PLAINTIFF MET THE HEIGHTENED PLEADING STANDARD BY PLEADING SPECIFIC ALLEGATIONS?

When an individual sues the government or agents of the federal government, the Plaintiff must meet a heightened pleading standard. The Plaintiff must plead specific facts sufficient to support his claim of deprivation of a statutory or constitutional right. *Butz v. Economu,* 438 U.S. 478, 504 (1978). However, because the action is subject to dismissal upon the pleadings without opportunity for discovery, the Plaintiff is not held to a standard of pleading which is unattainable. The Plaintiff has pled sufficient facts, which if taken as true, support a claim for violation of his constitutional rights to due process and to be free from harassment by the government agents and to be free from retaliation by agents of the federal government merely for exercising a right given him by statute.

It is well settled that the United States and its employees, sued in their individual capacities, are immune from suit if sovereign immunity has not been waived. *Price v. United*

***States, supra.***

The United States is the proper defendant for all acts of wrongdoing alleged to have been committed by these agents in derogation of the protections provided by the Taxpayer Bill of Rights with regard to "collection" activities; and the agents are responsible for those acts committed outside the scope of their proper responsibilities that are in contravention of constitutionally protected rights to due process under the Fifth Amendment.

Plaintiffs herein have sued these Agents under the cause of action in what has commonly come to be known as a "Bivens" action. The Plaintiff has buttressed his claim against the Agents and the United States with provisions of the Taxpayer's Bill of Rights, ( 26 U.S.C. 7433, 1998), though duly recognizing that this act did not become effective until after the violations perpetrated by these agents. The Taxpayer's Bill of Rights codified certain rights as a result of decades of egregious behavior on the part of agents of and sanctioned by the Internal Revenue Service. These rights had been argued for and asserted in Congressional hearings, through taxpayer refund suits in the federal district courts, and in administrative appeals of unfairly assessed and collected taxes.

Sovereign immunity does not bar damage actions against federal officials in their individual capacity for violations of an individual's constitutional rights. The Fifth Circuit in the ***Rutherford*** case recited the possibility of a Bivens action where the taxpayer alleged the IRS agent maliciously harassed them into paying taxes that were not due. ***Rutherford v. United States, 702 F.2d 580 (5th Cir. 1983).*** In ***Rutherford***, the Fifth Circuit recognized that the statutory mechanisms afforded taxpayers for enforcing a tax refund claim make no allowance for mental anguish caused by harassment, or for recovery of legal fees needlessly expended in an

attempt to recover clear title to property unjustifiably taken. Id. at 583.

Further, the **_Rutherford_** court found that a refund proceeding is not the process that is due the taxpayer, harassed and intimidated by the IRS agents, and does not provide an opportunity for the taxpayer's complaints and damages due to overreaching of governmental agents. The Honorable Hayden Head has denied the Plaintiff's request to combine the refund claim with the Bivens claim and, thus, the taxpayer has been forced to seek his remedy in a second action.

The agents' claim of qualified immunity may attach unless their "conduct violated clearly established constitutional rights of which a reasonable person should have known,". **_Harlow v. Fitzgerald_, 457 U.S. 800, 102 S.Ct. 2727, 2738-39 (1982)**. Mr. Guerra was well aware of the concerns of the Plaintiff in making certain that everything dealing with the government was properly handled and he tried to exploit this. Mr. Guerra states in his affidavit, although factually inaccurate, that Mr. Canseco told him he had been prosecuted by the federal government for Medicare fraud. (It was the Travis County District Attorney's Office and Medicaid fraud allegations.)

IRS Agents may be entitled to qualified immunity, but only if their conduct did not violate a clearly established statutory constitutional right of which a reasonable person would know. **_Bivens v. Six Unknown Narcotic Agents_, 403 U.S. @ 389**. Agents Davila and Guevara knew they had overreached and exhibited this indifference to due process when they interrogated and attempted to intimidate Mr. Sepulveda at the FBI office on May 20, 1998. (Affidavit of Vicente Sepulveda).

The Plaintiffs have met the standard of heightened pleading in providing to the Court a detailed pleading of the factual basis for the allegation of violations by the IRS agents and

constitutional violations engaged in by the agents and the IRS.

The agents cited herein violated the due process rights of the taxpayer in the following manner:

1. The individual taxpayer filed an amended tax return which resulted in a claim for a refund in excess of one hundred thousand dollars. From the outset of the review of the refund claim, agents Neira and Guerra attempted to deny the taxpayer representation through intimidation and threat. (Internal Revenue Manual 9781 Sub-Section 342.91).

2. Carl Neira informed Mr. Sepulveda that the IRS wanted access to all corporate financials from 1988 through 1995. The production would allow the IRS to "browse" through the corporate information and deductions until they had secured enough disallowances to offset the refund reflected in the individual taxpayer's amended return. Mr. Sepulveda refused to allow the agents access to the documents unless they opened a full audit of the corporate returns for the relevant tax years. Opening those years for audit would allow the corporate taxpayer (the corporation) to claim any deductions that had been missed, as well as allow the IRS to assess deficient amounts.

3. On April 23, 1998, more than one hundred and eighty (180) days after the request for refund was filed, the individual taxpayer, Mr. Canseco, brought a taxpayer refund suit against the United States in federal district court *(Canseco v. United States, Cause No. C-98-160)*, requesting reimbursement for the overpayment of personal income tax in 1990 and 1993. Within two weeks without provocation or reason, the Defendant agents were engaged in a scheme to make it appear that Mr. Canseco had tried to bribe an agent of the IRS. These actions were retaliatory and constitute an unreasonable abuse of their power and do not fall within the scope of their duty as agents of the IRS.

4. In the guise of conducting the alleged "audit" of the corporate returns , Mr. Guerra came to the offices of Canales & Simonson, attorneys for Mr. Canseco and Reliable. The financial records for the corporation(s) were provided to Mr. Guerra on May 6, 1998. The IRS engaged in the harassment of the taxpayer, when instead of conducting a good faith audit of the corporation's tax returns, the agent set up a "sting" operation trying to entrap Mr. Canseco into offering him a bribe. He did so with the full knowledge and sanction of his supervisor, Mr. Neira.

5. Mr. Canseco contacted an FBI agent. This same agent was in contact with the IRS agents and special agents. These Agents taped conversations with the taxpayer, trying to get him to meet Mr. Guerra. Plaintiff believes that the plan was to get

the FBI agent to persuade Mr. Canseco to offer a bribe to Mr. Guerra, who would be wearing a wire, in order to secure evidence showing that Mr. Canseco offered a bribe. Fortunately, Mr. Canseco refused to participate in the matter.

## CONCLUSION

The government repeatedly expresses the opinion that the relevant portions of the Taxpayer Bill of Rights and the Internal Revenue Code do not apply to the conduct of the agents or the IRS when those actions are taken pursuant to the "assessment" of taxes. They do acknowledge that the right to be free from harassing activity does apply to their conduct when the action occurs in the "collection" of taxes. These Agents acted in the process of denying a refund.

In part, the conduct of the agents in the instant case occurred in the process of a refund claim for the reimbursement of taxes already collected by the government. The taxes were paid and the government was attempting to avoid repayment of the money. This conduct occurred in the post-collection period, which is analogous to the "collection" rather than the "assessment" phase of the process.

The individual taxpayer, Fernando Canseco, was an entity separate from the corporate taxpayer. The agents attempted to avoid repayment of the monies owed to the individual by insisting on access to the corporate records and returns. When the taxpayer insisted that the government open the corporate years for full audit, the government resisted. After repeated requests and much discussion, the government opened certain corporate returns to audit. However, the agent did not perform a good faith audit and made no attempt to do so, despite the fact that the taxpayer and his CPA had gone to a great deal of trouble and expense to collect all the documents and to prepare for the audit.

These Plaintiff Taxpayers have gone to great expense and have suffered considerable mental anguish at the hands of these agents. The Agents attempted to alienate from Mr. Canseco those people, his counsel and his CPA, who were in the best position to advise and assist him. A less loyal CPA might well have abandoned his client to the "overzealous officialdom" of Neira, Guerra, Davila and Guevara.

These Defendants are not entitled to sovereign immunity or to qualified immunity because their conduct violated clearly established constitutional rights of due process, which a reasonable person would have known and were anticipated in the ***Rutherford*** decision. The Plaintiffs have provided facts sufficient to meet the heightened pleading standard and are entitled to seek redress for the above-stated violations of their constitutionally protected right to due process protection under the Fifth Amendment.

Therefore, Plaintiffs request that the Court deny the Defendants' Motion For Dismissal and The Alternative, Motions For Summary Judgment and allow Plaintiffs to go forward with suit.

Respectfully submitted,

JOELLEN HEWINS
Federal I.D. No. 12421
State Bar No. 09367857

**CANALES & SIMONSON, P.C.**
Attorneys at Law
2601 Morgan Ave.-P.O. Box 5624
Corpus Christi, Texas 78465-5624
(361) 883-0601
(361) 884-7023 - Fax
**ATTORNEYS FOR PLAINTIFF**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FERNANDO CANSECO and | ) | |
| RELIABLE AMBULANCE SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. C-00-104 |
| | ) | |
| UNITED STATES OF AMERICA, CARL | ) | |
| NEIRA, Internal Revenue Service | ) | |
| Agent, LUIS GUERRA, Internal | ) | |
| Revenue Service Agent, ROBERT L. | ) | |
| DAVILA, Criminal Investigation | ) | |
| Division Officer, and VICTOR G. | ) | |
| GUEVARA, Criminal Investigation | ) | |
| Officer, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Plaintiffs' Response to Individual Defendants' Brief In Support of Their Motion To Dismiss, Or In The Alternative Motion For Summary Judgment* was served via fax and by via UPS Express Mail to Ms. Cynthia Vance, Attorney Tax Division, Department of Justice, Maxas Energy Tower, 717 N. Harwood, Suite 400, Dallas, Texas 75201, on this _____ day of June, 2000.

JO ELLEN HEWINS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FERNANDO CANSECO and RELIABLE AMBULANCE SERVICES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL NO. C-00-104 |
| UNITED STATES OF AMERICA, CARL NEIRA, Internal Revenue Service Agent, LUIS GUERRA, Internal Revenue Service Agent, ROBERT L. DAVILA, Criminal Investigation Division Officer, and VICTOR G. GUEVARA, Criminal Investigation Officer, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

Came on this the ____ day of_____, 2000, Defendant's Motion to Dismiss and

Motion For Summary Judgment.  After having been considered by the Court, the same is hereby, in

all things, DENIED.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendant's  Motion

to Dismiss and Motion For Summary Judgment be DENIED.

SIGNED on this _____day of _____, 2000.

_____
JUDGE PRESIDING